UNITED STATES BANKRUPTCY COURT  　　　　FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

────────────────────────────────────────

| | |
|---|---|
| In re: | Chapter 11 |
| ENRON CORP., et al., | Case No. 01-16034 (AJG) |
| Debtors. | (Confirmed Case) |

────────────────────────────────────────

| | |
|---|---|
| ENRON CORP., | |
| Plaintiff, | |
| | Lead. Adv. Pro. No. 03-92909 (AJG) |
| v. | |
| | Adv. Pro. No. 04-02462 (AJG) |
| CAROL WHALEN, EXECUTRIX OF THE ESTATE OF JOHN C. BAXTER, | |
| Defendants. | |

────────────────────────────────────────

## OPINION REGARDING PARTIES' MOTIONS FOR SUMMARY JUDGMENT

A P P E A R A N C E S:

KRONISH LIEB WEINER & HELLMAN LLP
Attorneys for the Plaintiff
1114 Avenue of the Americas
New York, NY 10036

    Ronald R. Sussman, Esq.
    James A. Beldner, Esq.
    Nicholas Smithberg, Esq.
    Seth Van Aalten, Esq.
       Of Counsel

DEWEY BALLANTINE LLP
Attorneys for the Defendant
1301 Avenue of the Americas
New York, NY 10019

    Dianne Coffino, Esq.
    Carey D. Schreiber, Esq.
       Of Counsel

ASHBY & GEDDES
Attorneys for the Defendant
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899

      James McC. Geddes, Esq.
      Gregory A. Taylor, Esq.
          Of Counsel

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

I. INTRODUCTION

      Before the Court are the parties' cross-motions for summary judgment, or in the alternative, partial summary judgment, in the above-referenced adversary proceeding. Both the defendant, Carol Whalen ("Whalen"), executrix for the estate of John C. Baxter ("Baxter" and the "Baxter Estate"), and the plaintiff, Enron Corp. ("Enron"), argue that each is entitled as a matter of law to judgment in its favor on the claims set forth in the complaint (the "Complaint"). Having reviewed the parties' pleadings, and a hearing having been held on this matter, the Court concludes Enron is entitled to partial summary judgment in its favor.

II. PROCEDURAL BACKGROUND

      On December 2, 2001 (the "Petition Date"), and continuing thereafter, Enron and certain of its affiliates and subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court (the "Bankruptcy Proceeding"). On November 14, 2003, Enron filed a complaint against thirty-two former employees, including Whalen as executrix of the Baxter Estate, seeking to avoid certain deferred compensation payments made to those former employees prior to the Petition Date. On February 27, 2004, the Court entered an order, subsequently amended on March 8, 2004, severing that action into separate adversary proceedings against each individual and thereafter consolidating those thirty-

2

two adversary proceedings for administrative purposes (the "Lead Adversary Proceeding"). Lead Adv. Pro., Docket Nos. 102, 107. Enron then filed the Complaint and initiated this adversary proceeding (the "Baxter Adversary Proceeding") on March 2, 2004. Baxter Adv. Pro., Docket No. 1. The Defendant filed her answer in response on March 12, 2004. Baxter Adv. Pro., Docket No. 4.

In light of the large number of avoidance actions Enron has filed, and the common issues of fact and law implicated in all those actions, the Court issued the Order Granting Joint Motion of Debtors and the Creditors' Committee for Entry of an Order Temporarily Staying Avoidance Action Discovery (the "Avoidance Action Procedure Order") on November 18, 2004.[1] Bankr. Pro., Docket No. 22012 (the affected actions are listed in Exhibit 1 to the order). On June 20, 2005, upon motion of Enron and the Official Committee of Unsecured Creditors, the Court then entered an order consolidating the various avoidance actions for the purposes of litigating insolvency-related issues (the "Insolvency Consolidation Order" and the "Insolvency Proceeding") and providing for the appointment of a Defendants' Steering Committee. Bankr. Pro., Docket No. 26188. Though the Insolvency Consolidation Order contemplated that all fact and expert discovery would be completed by September 29, 2006, the parties have informed the Court that, due to outstanding discovery-related issues, that deadline will not be met, and further, that they are unable to estimate when discovery will be completed. *Letter from Discovery Committee Liaison Counsel*, March 27, 2006, Insolvency Pro., Docket No. 37. A status conference on this matter is to be held on September 22, 2006.

On December 16, 2005, Whalen filed a Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment (the "Whalen Motion"). Baxter Adv. Pro., Docket No.

---

[1] *See, e.g., Enron Corp. v. Citigroup, Inc., et al.*, No. 03-9266 (Bankr. S.D.N.Y. 2003) (the "Megacomplaint"); *Enron Corp. v. J.P. Morgan Sec. Inc., et al*, No. 03-92677 (Bankr. S.D.N.Y. 2003); *Enron Corp. v. Massachusetts Mut. Life Ins. Co., et al.*, No. 03-92682 (Bankr. S.D.N.Y. 2003) (together, with *J.P. Morgan*, the "Commercial Paper Litigation").

21. Whalen asserted that she was entitled to summary judgment, or partial summary judgment, on two issues: first, that the Court is barred by the probate exception to federal jurisdiction from adjudicating the Complaint, and second, that Enron could not as a matter of law establish the necessary elements of the avoidance claims asserted in the Complaint.  On March 3, 2006, Enron filed its response to the Whalen Motion as well as its own Cross-Motion for Summary Judgment (the "Enron Motion").  Lead Adv. Pro., Docket No. 231.  A hearing was held on these motions on June 1, 2006.  *See Transcript of Hearing Held on June 1, 2006* (the "*Transcript*"), Baxter Adv. Pro., Docket No. 33.

III. FACTUAL BACKGROUND

Effective September 1, 2000, Enron hired Baxter to serve as Vice Chairman and Chief Strategic Officer.  As a condition to his employment, Baxter was eligible to participate in the Enron Corp. 1994 Deferral Plan (the "Deferral Plan"), which allowed eligible employees to defer a portion of their salary into a Phantom Stock Account or a Flexible Deferral Account so as to defer the taxes owed on that salary.  Baxter elected to participate in the Deferral Plan, and as of September 30, 2001, his account held a balance of $1,439,708.33.

The Deferral Plan allowed participants to request early withdrawal of the deferred salary, subject to approval of a deferral plan committee (the "Deferral Plan Committee") and a mandatory 10% early withdrawal penalty.  Between October 25, 2001, and November 30, 2001, roughly two hundred Enron employees participating in the Deferral Plan submitted requests for early withdrawals from their accounts.  On October 29, 2001, Baxter likewise submitted a "Request for Distribution" seeking immediate withdrawal of 100% of the funds he held in the Deferral Plan.  On that same day, Kenneth Lay, then Enron's Chief Executive Officer, appointed Greg Whalley, then Enron's president, to serve alone as the Deferral Plan Committee, which up to that point had not existed as a standing committee.  By December 5, 2001, 126 requests by

4

113 employees had been approved and a total of $53,135,993.10 was paid out. Baxter received a gross payment of $1,295,737.50 (the "Baxter Transfer"), including a net payment by check dated November 16, 2001, in the amount of $796,813.88 and a federal tax withholding of $498,923.62.

Baxter subsequently passed away on January 25, 2002. On April 8, 2002, the Baxter Estate was admitted to probate in the County Probate Court for Fort Bend County, Texas (the "Texas Probate Court"), and Whalen was named as executrix of the estate. As of the present, that probate proceeding has not been closed.

IV. JURISDICTION

This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F). The Court has postconfirmation jurisdiction under paragraph 60 of the Court's Order Confirming Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, and Related Relief (the "Plan"), dated July 15, 2004. Thus, the Court would normally have subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and under the July 10, 1984, "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). However, Whalen argues that the "probate exception" to federal jurisdiction strips the Court of subject-matter jurisdiction over this proceeding and that only the Texas Probate Court may hear this matter. The Court disagrees and concludes that the "probate exception" does not bar its exercise of jurisdiction over this proceeding.

The recent Supreme Court decision in *Marshall v. Marshall* is wholly dispositive on this issue. 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006), *reversing Marshall v. Marshall*, 392 F.3d 1118 (9th Cir. 2004). Considering on appeal a Ninth Circuit decision embracing an expansive view of the probate exception, a decision upon which Whalen relied in large part for support, the Court clarified its previous holding in *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256

5

(1946), and restricted the application of the probate exception doctrine to a narrow and more well-defined field. The Court in *Markham* observed in dicta that federal courts may entertain suits implicating probate issues "so long as the federal court does not interfere with the probate proceedings." 326 U.S. at 494. Recognizing that this language had produced confusion among lower courts and was the foundation of the Ninth Circuit's holding, the Court held in *Marshall* that this pronouncement only reiterates "the general principle that when one court is exercising *in rem* jurisdiction over the a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." 126 S.Ct. at 1748. Thus, "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* However, the probate exception does no more and "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.*

Whalen argues that Enron seeks to have the Baxter Estate immediately return to Enron compensation in the amount of the Baxter Transfer, plus interest, costs, expenses, and attorneys' fees. As Whalen correctly notes, an order from the Court effecting such a disposition of the Baxter Estate would represent an exercise of *in rem* jurisdiction by the Court over a *res* already under the jurisdiction of the Texas Probate Court. However, Whalen is incorrect in asserting that Enron seeks such an order. The Complaint does not request the immediate transfer of any property belonging to the Baxter Estate, and counsel for Enron stated clearly at the hearing that Enron would enforce any judgment received here in the Texas Probate Court. *Transcript*, 35:22-24. Further, Whalen's counsel conceded at the hearing that in the absence of a request for such an order, no issue arises concerning the Court's exercise of subject matter jurisdiction. *Transcript*, 20:11-17. Having reviewed the Complaint, the Court concludes that Enron seeks no more than to adjudicate its rights concerning the Baxter Transfer, an action which does not

6

interfere with the jurisdiction of the Texas Probate Court. Accordingly, the Court concludes that it has subject matter jurisdiction over this proceeding and that the probate exception does not strip the Court of such jurisdiction.

V. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, states that summary judgment should be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant must set forth specific facts showing that there is a genuine issue for trial." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2nd Cir. 1990) (internal quotation omitted). *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence must be "viewed in the light most favorable to the party opposing the motion." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1352 (2nd Cir. 1994). Furthermore, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Where, as here, a party has filed a cross-motion for summary judgment, the Court must pay particular attention to the parties' respective burdens of proof, persuasion, and production. When faced with a cross-motion for summary judgment, the court must consider the merits of each motion independently of the other. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461

(2nd Cir. 1993). Although it may be implied from the filing of a cross-motion that the parties have agreed that no material issues of fact exist, the court is not bound by this implicit agreement and is not required to enter a judgment for either party. *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2nd Cir. 2001). *See also Aviall, Inc. v. Ryder System, Inc.*, 913 F.Supp. 826, 828 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2nd Cir. 1997). Moreover, "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein*, 996 F.2d at 1461. When analyzing each motion, the court must be careful to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.*

VI. DISCUSSION

Enron seeks to avoid the Baxter Transfer as a preference pursuant to section 547(b) of the Bankruptcy Code. Under that provision, a "transfer of an interest of the debtor in property" may subsequently be avoided where the transfer (1) was made to or for the benefit of a creditor, (2) was on account of an antecedent debt, (3) was made while the debtor was insolvent, (4) was made on or within ninety days before the petition date, and (5) was for an amount greater than the creditor would have received under a Chapter 7 liquidation, if the transfer had not been made, and otherwise under the provisions of the Bankruptcy Code. 11 U.S.C. § 547(b) (2006). Enron bears the burden of establishing each of these elements. 11 U.S.C. § 547(g) (2006). Enron seeks to avoid the gross amount of the Baxter Transfer, that is, both the net payment and that sum withheld for federal tax purposes. Whalen concedes that Enron has established the second, fourth, and fifth elements. However, Whalen seeks to sever the Baxter Transfer into two distinct transfers, the net payment of $796,813.88 and the federal withholding of $498,923.62, and argues that the transfer of the withheld funds was not a transfer of "an interest of the debtor in property" as a matter of law and therefore may not be avoided under section 547(b). In addition,

8

the parties dispute whether Enron has established the first and third elements, and Whalen also suggests that the Enron Motion is premature in light of pending discovery-related issues.

Whalen relies in large part on the Supreme Court's decision in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), in support of her argument that Enron may only avoid the net payment. In *Begier*, the Court held that a trustee could not avoid and recover from the IRS a payment of withholding and excise taxes made prior to the petition date. *Id*. The Court reasoned that under 27 U.S.C. § 7501, funds withheld for federal tax purposes are held in trust for the benefit of the federal government, and that those funds therefore did not constitute property of the debtor within the meaning of section 547(b). *Id.* at 58-60. The Court further held that such funds are withheld "at the time of payment to the employee of his net wages," and that the statutory trust is created "at the moment the relevant payments were made." *Id*. at 60-61.

Drawing upon these conclusions, Whalen argues that the withheld funds here were likewise held in statutory trust for the benefit of the federal government, and therefore, that only the net payment may be avoided. In particular, Whalen cites the Court's holding that "… the funds paid here were not the property of the debtor *prior to payment*; instead, they were held in trust by the debtor for the IRS." *Id.* at 55 (emphasis added). Whalen contends that this clear statement is dispositive of the issue before the Court.

However, Whalen misreads the *Begier* holding and the facts of the case here. *Begier* stands only for the proposition that a trustee may not avoid the transfer of withheld funds *from* the statutory trust to the IRS. That is, *Begier* speaks to the avoidability of funds after they have been "placed" in the statutory trust; the Court's holding in *Begier* in no way suggests that the debtor may only recover the net, rather than gross, value of preferential transfers from the benefiting parties. This is clear from any more than a cursory reading of the opinion. The Court

9

defined the property of the debtor as "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58. *See also Warsco v. Preferred Technical Group*, 258 F.3d 557, 564-65 (7th Cir. 2001) ("Courts considering [*Begier*'s definition] have focused on whether the transfer diminished the debtor's estate.") (citations omitted). Recognizing that, as a result of the statutory trust, the debtor company is only a trustee of the government's property in the trust, the Court thus held that the transfer of funds from the statutory trust could not be avoided.

Whalen attempts to conflate the transfer of funds *from* the statutory trust, which *Begier* speaks to, with the transfer of funds *to* the statutory trust, which transfer is at issue here. Whalen argues that the *Begier* holding should be applied to both of these transfers collectively, untenably contending that the funds transferred *to* the statutory trust were likewise not the property of the debtor *before* the transfer was made. Neither logic nor the Court's holding in *Begier* can plausibly be marshaled in support of such a conclusion. As a matter of law, the *Begier* Court rested its conclusion on the recognition that funds held in the statutory trust are the government's property; as the operative transfer here is the transfer of funds *to* the statutory trust, the funds, by definition, were not held in the statutory trust at the time the transfer to that very trust was made. And as a simple matter of logic, Whalen's proposition leads to the absurd conclusion that the funds transferred to the statutory trust were never the debtor's property, neither before nor at the time of the transfer to the statutory trust. Thus, the Court concludes that the Baxter Transfer transferred funds that were the property of the debtor, and it may therefore be avoided if Enron establishes the five elements under section 547(b).[2]

---

[2] As the Court noted in *Begier*, "Unlike a common-law trust, in which the settlor sets aside particular *property* as the trust res, § 7501 creates a trust in an abstract "amount" – a dollar figure not tied to any particular assets – rather than in the actual dollars withheld." 496 U.S. at 62. Thus, there is not an actual transfer of the withheld funds to the statutory trust – as the Court recognized in *Begier*, the trust is not necessarily distinct in real terms from the debtor's general accounts. Moreover, the Court in *Begier* held that the statutory trust is created at the time the payment of net

10

Having conceded that Enron has established three of the five elements, Whalen argues that Enron has not proven that the Baxter Transfer "was made to or for the benefit of" Baxter. This too is incorrect. As Enron has demonstrated, and which Whalen did not deny, the net payment was made to Baxter, and the federal withholding was made in Baxter's name. Strictly speaking, federal withholdings constitute a putative "credit" that may be applied to tax liabilities or claimed if the credit exceeds any such liabilities. It would be contrary to reason to conclude that the creation of such a credit is not "for the benefit of" the creditor, namely Baxter, at the time of the transfer.

Finally, Whalen argues that Enron has not established that it was insolvent at the time the Baxter Transfer was made, and also argues in the alternative that the Court should deny Enron's motion under Fed.R.Civ.P. 56(f), as the insolvency-related discovery has not as of yet concluded. Though Enron suggests that the presumption of insolvency under section 547(f) is sufficient to sustain a judgment in its favor, it has in its papers and at the hearing withdrawn its claim for summary judgment on that issue.

Whalen raised an additional argument at the hearing concerning the Baxter Estate's estate tax liabilities if the Baxter Transfer were to be avoided. Whalen suggested that, due to the operation of the estate tax laws, the Baxter Estate might be worse off if the Baxter Transfer were avoided than if the Baxter Transfer had never taken place. This argument was never developed fully, and Whalen did not provide a detailed analysis demonstrating these possible ramifications. Regardless, such equity concerns do not alter the fundamental legal conclusions discussed above.

---

wages to the employee is made, further abstracting the process. However, as the *Begier* court recognized, section 7501 clearly creates a trust in legal terms, whether real or not, and thus the Court need not here labor to describe the practical mechanism through which funds are placed in such a trust. *See also Barnhill v. Johnson*, 503 U.S. 393, 400, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (the definition of a transfer under the Bankruptcy Code is "expansive") (citing 11 U.S.C. § 101(54) (1988)); 11 U.S.C. § 101(54) (2006) ("The term 'transfer' means … each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property.").

Moreover, "equity" considerations cannot shelter a transferee from the consequences of the manner in which the transfer was made.

Accordingly, the Court concludes that Enron has established as a matter of law the first, second, fourth, and fifth elements of an avoidance action under section 547(b). As Enron has withdrawn its claim for judgment as a matter of law as to the third element, the Court does not reach any conclusion regarding the issue of insolvency. Conversely, the Court concludes that Whalen is not entitled to judgment as a matter of law in her favor on any elements under section 547(b). As Enron has withdrawn its claim for judgment as a matter of law as to the third element, Whalen's request for relief under Rule 56(f) is moot.

VII. CONCLUSION

In light of the foregoing, the Court concludes that the Enron Motion should be granted in part, excepting its claim for summary judgment on the issue of insolvency, and that the Whalen Motion should be denied in full. Enron is to settle an order consistent with this Opinion.

Dated: New York, New York
       September 15, 2006

                                              **s/Arthur J. Gonzalez**
                                              UNITED STATES BANKRUPTCY JUDGE